# J. H. CHEETHAM v. K. S. MUHLENBERG, ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF BERKS COUNTY.

Argued March 3, 1890—Decided March 17, 1890.
[To be reported.]

(*a*) A testator owned three houses situated side by side. He devised two of them, with their appurtenances, to his son, and devised the third to

Decision of Court below.

his daughter. Annexed to the latter devise was a reservation, for the use of the owners and occupiers of the houses given to the son, of a right of passage along a certain alley.

(b) This alley adjoined the house devised to the daughter. The second story of one of the houses given to the son extended over the alley, and the cellar of the same house extended under it, to the foundation wall of the daughter's house. The alley way, supported by a series of arches in the cellar, was used by the occupants of each house:

1. The alley way was an integral part of the house thus extending over and under it, and the devise of said house to the son accordingly passed to him the title to the soil of the alley. Such a positive grant cannot be taken away by a mere implication arising from the reservation in the other devise.

2. The reservation was wholly useless, as in view of the situation of the alley and its previous use, the devisees of both houses would have been entitled to use it without any such provision: it was a manifest blunder in the will, and does not justify an implication of an intention to give the daughter title to the alley.

Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 105 July Term 1889, Sup. Ct.; court below, No. 15 February Term 1887, C. P.

On January 12, 1887, an amicable action was entered between John Henry Cheetham, plaintiff, and Kate S. Muhlenberg and others, defendants, whereupon the plaintiff filed a declaration in trespass, claiming to recover damages for the erection by the defendants of a certain platform and stairway projecting from a house in the city of Reading, owned by said Kate S. Muhlenberg, and extending, as was alleged, over an adjoining lot owned by the plaintiff. The defendants pleaded not guilty. By agreement filed, the parties dispensed with trial by jury and submitted the case to the decision of the court, under the act of April 22, 1874, P. L. 109.

The case was heard on May 23, 1887, before ERMENTROUT, J., who subsequently filed a decision finding in substance the following facts:

Frederick Maurer, under and through whom both the plaintiff and the defendants claimed title, was the owner of both the properties mentioned in the declaration, from May 12, 1794, until his death in November, 1828. By his will, dated Decem-

ber 11, 1818, and admitted to probate November 25, 1828, he devised to his son Daniel Maurer, a lot with two houses erected thereon, which is now owned by the plaintiff, the language of the devise being as follows : " Also two houses adjoining each other, situate on the west side of Callowhill street, and the lot thereto belonging, in the tenure of John Potter and Joshua David, with the appurtenances, to have and to hold the said messuage or tenements, houses, tracts, lots or pieces of land unto the said Daniel Maurer, his heirs and assigns forever." He also devised to said Daniel the one half of the pump or well of water standing opposite the tavern.

In a subsequent paragraph of his will the testator devised to his daughter, Mary Hartman, the tavern property referred to, the language of the devise being as follows : " All that public house and buildings thereto belonging, situate on the west side of Callowhill street in the borough of Reading aforesaid, and the lot of ground thereto belonging, to extend from the privy westward in a straight line to stable, the southermost corner ; bounded by Callowhill street aforesaid, on the north by a twenty foot alley, on the west by another twenty feet wide alley, and on the south by the lot hereinbefore devised unto my son Daniel, excepting and forever reserving for the use of the owners and occupiers of the said two houses devised to my son, the privilege of passing and repassing the alley between the new and old house at all times and seasons."

The tavern or public house referred to is the one designated as the " old house," and the northern of the two adjoining houses devised to Daniel is the one designated as the new house.

At and before the making of said will, and for very many years previous, the second story of the northern one of the two houses devised to Daniel Maurer was, for its entire depth, built over part of said alley, to wit, to a distance of 34 feet 3 inches ; and the cellar of the said northern house extended under said part of the said alley to the foundation walls of the defendants' house, the surface of said part of the alley being supported over the said cellar by a series of arches, and the said house and cellar have with reference to the said alley continued the same to this time.

The will also contained this paragraph : " It is further my

will, that after the payment of my just debts, the residue of my estate, whatsoever, I do hereby give unto my daughter Mary."

By divers conveyances the defendants have become the owners of the full title, rights and privileges devised as aforesaid to Mary Hartman.

The building of plaintiff is 34 feet 3 inches in depth, and that of the defendants 44 feet and $\frac{1}{2}$ inch in depth. The part of the alley referred to, over which plaintiff's buildings extend, is in length 34 feet 3 inches, and in width 3 feet 8 inches, measuring from the wall of defendants' building. Back of this, without any gate or obstruction to the alley, is an area space level with the alley, and used before and since Frederick Maurer's death in connection therewith as the alley. Said area space is fixed by definite and visible objects, walls, fences, and lines, bounded and described as follows: . . . . .

At the rear of this area is a brick wall 8 feet high, 12 inches thick, in which is a gate, and in the wall of defendants' building, opening into said area, is a door, through which said gate and door defendants and all their predecessors in title and occupiers passed into the said area, and thence through said area, and thence into said alley, ever since from the death of said Frederick Maurer, uninterruptedly, and at their free will and pleasure. And the plaintiff and his predecessors in title from their said gate passed into said area and out into and through said alley in a similar manner. In the same manner Frederick Maurer, from the monuments and marks upon ground, to wit, said gates, walls, and door, used and permitted the properties to be used. No building has ever been erected on said area.

The defendants have constructed a platform extending from the second story of their building horizontally, a distance of 4 feet 4¼ inches, beginning at the junction of the western end of plaintiff's building with the wall of defendants' building, but not extending into or resting in any way upon plaintiff's building. The top of the platform is 9 feet 7 inches, and the under part of the platform is 8 feet 10 inches, from the bottom of said area. Stairs lead westwardly from said platform, but said stairs do not pass over said area in any way whatsoever, and portions of the platform do not cover the area.

Decision of Court below.

None of said owners and occupiers of said "two houses adjoining each other," or the plaintiff himself, has ever exercised or used any greater right or privilege in said area and covered alley, than the right of passing and repassing from their said premises into, over, and through said area and through said covered alley.

Said area and covered alley, in point of width, height, and light, is, notwithstanding the erection of said platform as before described, substantially as convenient as before for the purposes of a way or alley. I find it does not interfere with the full right and privilege of the owners and occupiers of the said two houses, now owned by plaintiff, of passing and repassing at all times and seasons, through either the said area or covered alley. . . . . .

No part of said area is included within the boundary lines of the plaintiff's property, as the same are located and fixed by definite and visible objects upon the ground, to wit, gates and walls; but said area is included within the boundary lines of the defendant's property.

After finding the facts substantially as above stated, the decision of the court proceeded:

The plaintiff presents eight points, and the court is respectfully requested to find and adjudge as therein stated.

I now give the points and my answers thereto.

1. At and before the time of the making of the will of Frederick Maurer, deceased, viz., in 1818, the second story of the northern one of the two houses, devised to Daniel Maurer and now belonging to the plaintiff, was built over the alley in question, and the cellar of the said northern house extended under the said alley to the foundation walls of the defendants' house, the surface of the alley being supported over the said cellar by a series of arches, and the said house and cellar have, with reference to the said alley, continued the same to this time.

Answer: I so find and adjudge, with this qualification, that by "the alley in question" is meant the covered alley, and not the area portion.[1]

2. The ground whereon the said alley is located was, at the time of the making of the will of Frederick Maurer aforesaid,

Decision of Court below.

part of the lot belonging to the two houses devised to Daniel Maurer as aforesaid, and now owned by the plaintiff, and as part of the said lot passed, under the terms of the said will, to the said Daniel Maurer.

Answer: I cannot so find or adjudge.[2]

3. The excepting and reserving clause following the devise to Mary Hartman must be read with the word "for" changed to "from;" this being the only mode by which the said clause can be rendered reasonable and in harmony with the previous devise to Daniel Maurer. The purpose of the said clause was to give to Mary, her heirs and assigns, the right to use the said alley, the ground covered by which had already been devised to Daniel.

Answer: I cannot so find or adjudge.[3]

4. Mary Hartman and the defendants, who are her successors in title, had and have the right of passing and repassing over the said alley. They have not the right to erect any structure upon or over the same, nor to obstruct it in anywise.

Answer: I so find and adjudge, as to the right of passing and repassing. They have no right to erect any structure upon the alley or obstruct it. The structure erected is, however, lawful, and is no obstruction.[4]

5. The defendants have constructed a platform and stairs which in part extend over the said alley, and for such part are an encroachment upon the plaintiff's property and an infringement of his rights.

Answer: I cannot so find or adjudge.[5]

6. The old wall across the rear of the alley indicates the extent of the same, and, in so far as the said platform and stairs are not vertically above the ground lying to the westward of the said wall, such platform and stairs are an encroachment upon the plaintiff's property.

Answer: I cannot so find or adjudge.[6]

7. The allegations contained in the several counts of the plaintiff's declaration have been substantially established and are substantially true, and the issue of fact framed by the pleadings must be and is found for the plaintiff.

Answer: I cannot so find. The allegations are not established.[7]

8. The plaintiff is entitled to recover nominal damages.

Answer: I cannot so find. Plaintiff has sustained no damages, nominal or otherwise, and the defendants are entitled to a finding in their favor.[8]

—The court then found the following conclusions of law:

In determining the boundary lines between tracts of land, courses, calls, and distances must give way to the marks and monuments upon the ground. With greater reason do such marks control when the courses and distances are not given.

There is nothing in the deeds of either party or in the testimony to estop either, as against the other, from claiming the full benefit of their respective devises made by the common owner, Frederick Maurer, to their respective predecessors in title.

The reservation of right of way following the devise to Mary Hartman was for the benefit of the two adjoining houses, their owners or occupiers. " A reservation is something withheld or taken back out of that which had already been granted." The reservation necessarily implies that the right reserved was included in and passed by the devise to Mary, and that, to take it back, a clause of exception and reservation was necessary. The clause is neither ambiguous nor doubtful in its language or meaning. To read the word " for," " from," is a strained construction, and makes the clause ambiguous. Changing " for " to " from " would imply that simply the " use " had been devised to plaintiff's predecessors, and nowhere would it appear for whom the reservation was made.

[The testator, Frederick Maurer, did not intend to devise, and did not devise, to said Daniel Maurer the fee-simple either of said covered alley or of said " area." He intended to devise and did devise to said Daniel Maurer, so far as said area and covered alley are concerned, only " the right to the said Daniel Maurer, the owners and occupiers of his said two houses, the right of passing and repassing from their said premises into, over, and through said area, and through the said covered alley." The plaintiff acquired no greater right. The defendants are the owners in fee-simple of said area.][9]

Where the extent of a right of way is not definitely fixed in the grant or devise, the law requires that it must be a suitable and convenient passage for the purposes indicated. The owner of land over which his grantor has reserved a passage-way may

Opinion of Court below.

lawfully cover such passage-way with a building, platform, or covering, if he leave a space so that the way is substantially as convenient as before for the purposes for which it was reserved.

As to the fee-simple of the covered alley, whilst unnecessary in my judgment to make any finding or conclusion, because no obstruction in it is alleged, yet, because counsel so desire, I find and conclude that the fee-simple is in the defendants, as the grantees and assigns of all the right to Mary Hartman under the will of her father, subject to the reservation in said will set forth, and the building subject to the easement of support of defendants' building over, and the easement of cellar rights under, said covered alley way, as visibly and permanently placed thereon by the common owner, Frederick Maurer.

The plaintiff having declared and founded his action upon his right as owner of the fee, it is essential to recovery to show not merely such right as owner of the fee in the covered alley, but in the area over or upon which the structure complained of was erected. Having such title to neither, and his rights not having been infringed upon, I find in favor of defendants.

Exceptions on behalf of the plaintiff to the findings and conclusions aforesaid were overruled by the following opinion, ERMENTROUT, J.:

Upon examination of this case, we see no reason to make any changes in the findings of fact or conclusions of law.

The case involves the construction of a will, and we are of opinion that we have given effect to the plain intentions of the testator. In the devise to the son the father was careful to limit the extent of the " lot " by the words " the lot thereunto belonging in the tenure of John Potter and Joshua Davis." No metes or bounds were given. In 2 Rapalje & Lawrence's Law Dictionary, 1262, we find this : " We speak of tenure of land in the sense of occupation or tenancy, especially with reference to cultivation," etc. The testator evidently meant, simply that body of land in actual cultivation and occupancy by tenants, such as garden, yard ; a visible occupation with the privacy and exclusiveness, natural and incident to a tenant's possession. He did not intend to apply the word to an area or alley to which admittedly all the adjoining occupiers had access and privilege. Neither alley nor area appear to have been in

Opinion of Court below.

the exclusive occupancy or use of such persons or their successors. The very walls show this fencing in the tenant's portion away from the hotel property which surrounded its side and rear. Maurer had a perfect right to do with his property as he pleased, and evidently the alley existed as a side entrance to the hotel long before he built adjoining. The side door of the hotel leading into it was there, and, therefore, when he built he walled in the tenant's yard from the area and alley of the hotel, keeping out of the tenant's yard the guests who might pass through the side entrance to enter the hotel, and securing privacy for the tenants, the principal use of the alley for the hotel, with its many comers and goers, its way by privilege for the few of the private families upon the adjoining lots. All the monuments upon the ground and the appearances indicate this. The tenants of plaintiff and predecessors simply used a right of way. Nowhere does there appear the assertion or claim of a fee-simple right until the present contention.

It must not be forgotten that Mary Hartman was also the chief object of the testator's bounty, and to still further show this, a residuary clause appears, giving her " the remainder of all his estate, whatsoever."

We have already indicated in " the conclusions of law " our views upon the clause of reservation. This clause cannot be eliminated, nor has it been satisfactorily explained away by plaintiff. If the mere privilege of " passing " was all that was intended for Mary, and the title was intended for the son, a reservation in her favor should have been added to the devise to the son, and the reservation should have been omitted from the devise to Mary.

We have given the will a reasonable construction, which will accord with the intention of the testator, looking at all the circumstances under which it was made. And in determining the extent of the right of way of plaintiff, we have followed the well-considered case of Atkins v. Bordman, 2 Metc. 457, wherein the principles involved in this case are elaborately discussed.

The exceptions filed are dismissed, and [judgment is ordered to be entered in favor of defendants, according to the decision previously filed.] [22]

Judgment having been entered for the defendants, the plaintiff took this appeal, assigning for error:

1–8. The answers to plaintiff's points.[1 to 8]

9. The portion of the decision embraced in [ ] [9]

22. The order entering judgment.[22]

*Mr. Cyrus G. Derr*, for the appellant:

1. The theory upon which the court below decided the case was that because the clause upon which it was ruled followed the devise to Mary Hartman and reserved to Daniel the right to the use of the alley, therefore there was an implication that the fee-simple title to the alley was to pass to Mary. Such a construction cannot be correct, because it makes an implication overrule a previous express grant, and because it does violence to the circumstances and conditions then existing, and is unreasonable. Under the facts found by the court, the alley and area were a natural part of the plaintiff's property, as it existed at the time of the making of Frederick Maurer's will, were not a natural part of the defendant's property, and the will having devised the former property to Daniel in express terms, a mere implication cannot take the alley out of that devise: Inchequin v. French, Ambler 33.

2. The reservation was manifestly an error. Daniel, in whose favor it was made, did not need it, while Mary did need it. This leads to the conclusion that it was intended for her; and that by mistake of the scrivener the clause was added to the devise in favor of Mary, instead of to the devise in Daniel's favor, and the wrong name was used in it, or else the word "from" was intended to be used instead of "for," making it a reservation from Daniel's devise, instead of one for him. So changed, the reservation becomes sensible; otherwise the most absurd and inconvenient results follow, such as that Mary and her successors in the title may prohibit the enlargement or rebuilding of Daniel's house, and may overlap it by building the second story of their house over the uncovered part of the alley called the area. Upon the defendant's construction, the reservation takes from Mary something which had not been granted to her, and gives to Daniel something he already had.

*Mr. Henry A. Muhlenberg*, for the appellees:

Arguments.

1. The first and main principle in the construction of a will is that the meaning of the testator is to be gathered from its four corners. If it can be ascertained from the words of the testator alone, this must be done. What words can be clearer than those used by the maker of this will? He knew that the second story of the house devised to Daniel extended over, and its cellar extended under the alley, and the language of the devise to Daniel, coupled with the reservation appended to the devise in favor of Mary Hartman, almost irresistibly leads to the conclusion that the will was intended to give to the son and his successors in title an easement over the alley, and to the daughter and her successors in title the fee to the alley.

2. The proposition that the alley and area were a natural part of the property devised to Daniel, is a mere matter of opinion. Even if it would be accurate, in ordinary circumstances, these circumstances are controlled and altered by the will in the present case. As the alley was not included in the express devise to Daniel, the position that an implication cannot overrule an express devise need not be considered. The argument that the reservation must have been made in favor of Daniel instead of Mary by mistake, and that the testator intended to say an entirely different thing from what his words so plainly set forth, violates the elementary principle of construction above mentioned, and involves the assumption of a double mistake,—the writing of the wrong name by the scrivener, and a failure by the testator to discover it during the ten years he had the will in his possession.

3. The alternative supposition of a substitution by mistake of the word "for" in place of "from," would make the reservation operate, using the word "from" to exclude the owners of Daniel's two houses from the privilege of passing and repassing along the alley; yet the uncontradicted evidence is that the alley has always been used jointly by the owners and occupants of all three houses. The will creates an easement in Daniel's favor, as to the alley, by express grant; in such case, the only questions open for consideration concern the proper construction of the language of the grant: Meyer v. Young, 7 W. N. 60; Washburn on Easements, § 28. Nothing passes as an incident to an easement but what is requisite to its free enjoyment: 3 Kent's Com., 420; Washburn on Easements,

Opinion of the Court.

§ 28, note 5, page 44. The rights of the parties are determined by the grant, not by their intentions or declarations or the use of the property: Meyer v. Young, 7 W. N. 60; Pickering v. Stapler, 5 S. & R. 107; Kirkham v. Sharp, 1 Wh. 332; Connery v. Brooke, 73 Pa. 84. It being found as a fact that the platform does not obstruct the exercise of the plaintiff's easement, this action cannot be maintained: Connery v. Brooke, supra; Seidel v. Shearer, 2 Woodw. D. 197; Stevenson v. Stewart, 7 Phila. 293; Atkins v. Bordman, 2 Metc. 457, and cases cited.

OPINION, MR. CHIEF JUSTICE PAXSON:

This case involves incidentally the title to the soil of an alley way in the city of Reading. The alley is between the two properties of the plaintiff and the defendants, respectively. Both properties belonged at one time to Frederick Maurer, who remained the owner thereof to the time of his death. Frederick Maurer died in 1828, and by his last will and testament devised to his son, Daniel Maurer, the property now owned by the plaintiff. The language of the devise was as follows:

"Also two houses adjoining each other, situate on the west side of Callowhill street, and the lot thereto belonging, in the tenure of John Potter and Joshua David, with the appurtenances, to have and to hold the said messuage or tenements, houses, tracts, lots, or pieces of land unto the said Daniel Maurer, his heirs and assigns, forever."

The learned judge below has found, and the fact is not disputed, that "at and before the making of the will of Frederick Maurer, deceased, viz., in 1818, the second story of the northern one of the two houses devised to Daniel Maurer, and now belonging to the plaintiff, was built over the alley in question; and the cellar of the said northern house extended under the said alley to the foundation walls of the defendants' house, the surface of the alley being supported over the said cellar by a series of arches, and the said house and cellar have, with reference to the said alley, continued the same to this time."

We have thus the fact established beyond dispute that, at the time Frederick Maurer made his will, the alley way was an integral part of the house devised to his son; the house was built both over and under the alley; it was there, visible to the eye,

Opinion of the Court.

and forming an actual portion of the house. It is therefore obvious that a devise of the house and its appurtenances passed, not only the right to use the alley, but the soil thereof. The learned judge below held, however, that the alley did not pass by the devise for the following reason : The adjoining property owned by the present defendants was devised by Frederick Maurer to his daughter, Mary Hartman, and in that devise he made the following exception or reservation in favor of the property before referred to as devised to Daniel Maurer : " Excepting and forever reserving, for the use of the owners and occupiers of the said two houses devised to my son, the privilege of passing and re-passing the alley between the new and old house, at all times and seasons." This exception, being admittedly inconsistent with the devise already referred to in favor of his son Daniel, led the court below to the conclusion that the testator intended to give Daniel and his heirs the use of said alley merely, and to his daughter the soil thereof in fee. The effect of this decision is to take from Daniel not only the alley already given by the will, but also a part of his house.

There is an obscurity or inconsistency in this will which may be attributed to the testator himself, but is as likely to have been the blunder of the conveyancer. The reservation was wholly useless, as in view of the situation of the alley, and its previous use, the devisees of both houses would have been entitled to the use of the alley. It was unnecessary to give to Daniel and his heirs the use of an alley which he had already devised to him in fee ; it would have been equally unnecessary to devise to his daughter the use of an alley which the situation of the respective properties showed was common to each. It was a manifest blunder in the will.

A positive grant cannot be taken away by mere implication ; and, if we attribute to the testator the intent to give the daughter the soil of the alley, we must also attribute to him the intention to give her also a part of the house devised to Daniel. It would be a violent presumption—too violent to be seriously entertained—that he intended to devise to Daniel a part only of his house ; that the rear end of said house over the alley, and of the cellar under it, were to pass to his daughter. It is much more rational to suppose that the testator made a mistake in the reservation, than that he intended to cut off

the rear end of his son's house for his daughter's benefit. There was no possible motive for such an act. It was not required for any useful purpose. The property devised to his daughter could be enjoyed to the full extent without it. The devise gave her the use of her house, as it had always existed, including the use of the alley, and, as before observed, the reservation was not needed for the benefit of either party.

We are of opinion that the defendants had no right to construct the platform over the alley, and that the court below should have entered judgment for the plaintiff. Our decision does not cover the area referred to. That claim was practically abandoned here.

The judgment is reversed, and a procedendo awarded.